IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DANIEL A. GUERRA JIMENEZ,

    Plaintiff,

    v.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Civil No. 15-2877 (BJM)

## OPINION AND ORDER

Daniel A. Guerra Jimenez ("Guerra") seeks review of the Commissioner's decision finding that he is not entitled to disability benefits under the Social Security Act. 42 U.S.C. § 423. Guerra contends that the Commissioner's decision should be reversed and his case should be remanded for further proceedings. Docket No. 16. The Commissioner opposed. Docket 19. This case is before me on consent of the parties. Docket Nos. 4, 5. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## STANDARD OF REVIEW

The court's review is limited to determining whether the Commissioner and her delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro* v. *Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen* v. *Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz* v. *Sec'y*, 955 F.2d 765, 769 (1st Cir. 1991). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán* v. *Sec'y*, 819 F.2d 1, 3 (1st Cir. 1987). Written reports submitted by non-examining physicians who merely reviewed the written medical evidence are not substantial evidence, although these

may serve as supplementary evidence for the Commissioner to consider in conjunction with the examining physician's reports. *Irizarry-Sánchez* v. *Comm'r*, 253 F. Supp. 2d 216, 219 (D.P.R. 2003).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner must employ a five-step sequential analysis and consider all the record evidence to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 404.1520(a)(3); *Bowen* v. *Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote* v. *Sec'y of Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir. 1982). Under this sequential analysis, the Commissioner first determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. *Id.* § 404.1520(c). If not, the disability claim is denied. Third, the Commissioner decides whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Id.* §§ 404.1520(d), 404, subpt. P App'x 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to Step Four.

At Step Four, the administrative law judge ("ALJ") assesses the claimant's residual functional capacity ("RFC"), which is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments, and then determines whether those impairments prevent the claimant from doing the work he previously performed. *Id.* §§ 404.1520(e), 404.1545(a)(1). If the claimant can perform his previous work, he is not disabled. *Id.* § 404.1520(e). If he cannot, the fifth and final step asks whether the claimant can perform other work available in the national economy in light of his RFC, age, education, and work experience. If he cannot, then he is entitled to disability benefits. *Id.* § 404.1520(f). The claimant has the burden of proof at Steps One through Four. *Santiago* v. *Sec'y of Health & Human Servs.*, 944 F.2d 1, 5 (1st Cir. 1991). If the claimant has met that burden, the Commissioner has the burden at Step Five. *Ortiz* v. *Sec'y of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).

## BACKGROUND

*Procedural history*

On February 3, 2012, Guerra applied for Disability Insurance Benefits ("DIB"), claiming that since May 22, 2010, he had been disabled[1]. Social Security Transcript ("Tr.") 246. Guerra was 60 years old on the alleged onset date. Tr. 51. He had a four-year college education and was active in the military in the 1990s. Tr. 17. He first began working as an assistant teacher in 1975, then a regular teacher in 1976, and remained as a tenured teacher until 2000. Tr. 34. Later, he worked from 2002 to 2010 as a teacher and additionally, from 2002 to 2008 as machine operator. Tr. 19-20, 33, 35, 51. Since the alleged onset date of his disability due to chronic cervical and lumbar pain, he stopped working and started receiving treatment. Tr. 19, 41. No prior application had been filed by him with the Social Security Administration. Tr. 246. He lives with his wife of 30 years, who is disabled due to

---

[1] In Guerra's application, he did not specify the cause of disability ("I became unable to work because of my disabling condition on May 22, 2010."). Tr. 246. Based on all medical evidence, the ALJ concluded in his opinion that the alleged cause of Guerra's disabling condition is "chronic cervical and lumbar pain." Tr. 19.

bipolar disorder and receives Social Security DIB, and a son from his wife's first marriage who is 38 years old and suffers from severe autism. Tr. 32, 49-51. His wife handles all the household chores and cares for their son with help from the neighbors. Tr. 50

Guerra's initial application for Social Security DIB was denied on June 29, 2012 because the Social Security Administration found that his alleged limitations still allowed him to perform his previous job as a teacher. Tr. 56. On May 10, 2013, Guerra's reconsideration request was also denied on the same ground. Tr. 60. On June 17, 2013, Guerra requested a hearing before an ALJ, which was held on May 14, 2014. Tr. 30, 138-139. ALJ Richard Ortiz Valero heard testimony from Guerra, who was represented by counsel Fernando Díaz. Tr. 30. A Vocational Expert ("VE"), Dr. Hector Guerra, was also present and testified. Tr. 30. At the hearing, Guerra relayed that he suffered from intense pain in all parts of his shoulders, neck, upper and lower back, and a limitation in the range of motion in his neck. Tr. 43-45. Guerra alleged that since approximately 2009 or 2010, he started feeling cramps in his hands which was identified as Carpel Tunnel Syndrome. Tr. 45-46. He also alleged intense pain at his testicles, ribs, cervical region, and chest. Tr. 47-49.

Based on the testimony, and the hypothetical questions posed by the ALJ, the VE determined that Guerra could not perform his previous job as an operator of a package sealer machine in the manufacturing industry, but he was able to perform his job as a teacher. Tr.52-54. On June 27, 2014, the ALJ arrived at his decision that Guerra was not under a disability, as defined in the Social Security Act, Tr. 14-22. Specifically, the ALJ found that Guerra had not engaged in any substantial gainful activity since May 22, 2010, the alleged onset date, and that he suffered from the following severe impairments: degenerative disc disease, discogenic disease, herniated disc at C3-C4, disc bugle at L5-S1, carpal tunnel syndrome, major dysfunction of joints, status post discectomy, chronic lumbalgia and cervicalgia. Tr. 16. But the ALJ ultimately concluded that Guerra was not disabled, finding at Step Four that Guerra retained the RFC to perform past relevant work

as a teacher. Tr. 19-22. Guerra appealed the ALJ's decision to the Appeals Council. Tr.7. The Appeals Council denied Guerra's request for review in September 2015, rendering the ALJ's decision the final agency decision of the Commissioner. Tr. 4-5.

*Impairments and treatment*

Throughout the years since 2008, Guerra has been receiving treatment for his lumbar, shoulder, and cervical pain at the Department of Veterans' Affairs Medical Center. Tr. 44, 271-272, 341-354, 381-399, 415-435, 438-521, 553-594. He received medicines from the Veterans' Administration Programs, such as Chlorzoxazone, Diclofenac, and Flexeril for pain relief. Tr. 270. He received pharmacotheraphy for the following conditions: multilevel degenerative disk disease secondary to bilateral facet and uncovertebral hypertrophy with neutral foraminal narrowing; disc osteophyte complex at C3-C4 compressing and narrowing cord; degenerative disc disease throughout the lumbar spine with paracentral disc protrusion abutting S1 root. Tr. 271. According to the findings in the radiology reports conducted by physicians at the Veterans' Hospital, Guerra suffers from a "mildly narrowing and compressing" of the cord at disc osteophyte complex at C3-C4 level, and a "bilateral facet and uncovertebral hypertrophy with moderate-to-severe bilateral neutral foraminal narrowing" at C4-C5, C5-C6, C6-C7 and C7-T1 levels. Tr. 349-350. The MRI findings of the lumbar spine gave the impression that there was "straightening of the lordosis" and "degenerative changes throughout the lumbar spine." Tr. 353. According to the progress notes from the Department of Veterans' Affairs Medical Center, Guerra had made improvement because of the therapy, and the pain was reduced from 10 to 5 on a 1-10 scale in March, 2017. Tr. 381. But Guerra stated at the hearing that the therapy and medication he received generally do not relieve the pain. Tr. 42-43.

In 2012, Guerra also had been receiving treatment from a neck specialist, Dr. Hector Vargas Soto, who warned him of the likelihood of becoming a paraplegic. Tr. 45, 436-437. From October 2010 to 2012, Guerra received multiple physical therapies with a private physiatrist, Dr. Joanne Gonzalez Feliciano, M.D., from the "Centro de Terapia Fisica San

Sebastian." Tr. 42, 364-380. The progress notes from Dr. Gonzalez Feliciano mentioned Guerra's chronic pain in his neck, muscles, shoulders, and back. For example, the Electro Diagnostic Study conducted by Dr. Gonzalez Feliciano on December 7, 2011 shows that Guerra was diagnosed with cervical spasm, spondylosis, lumbar spasms, right shoulder tendonitis, and bilateral Carpal Tunnel Syndrome, and he suffered from reduced range of motion at the cervical and lumbar spine. Tr. 374. Dr. Gonzalez Feliciano opined that walking, lifting objects, and bending forward precipitated the pain in the patient, and in an eight-hour working day, the patient should sit, stand or walk a total of less than two hours. Tr. 375-376. Dr. Gonzalez Feliciano found that Guerra would need unscheduled breaks every hour to sit quietly for 15 minutes, and he could rarely lift or carry a weight of less than 10 lbs. Tr. 376-377. She also indicated that on average, Guerra is likely to be absent from work for more than four days per month as a result of his impairments or treatment. Tr. 377. The progress note dated February 29, 2012 says that through her treatment, the pain had reduced and Guerra's movement improved. Tr. 379.

The Social Security Administration requested a consultative examination from Dr. Samuel Mendez-Figueroa, M.D. Tr. 46. Dr. Mendez conducted a neurological evaluation on June 20, 2012 and diagnosed Guerra with chronic lumbalgia and cervicalgia, bilateral carpal tunnel syndrome, and diffuse arthralgia. Tr. 402. He evaluated Guerra's strength at lower extremities to be 4/5 for both left and right and found no atrophy in the patient. Tr. 404. He reported that there was joint tenderness and sensory changes present for both right and left sides, but no joint pain or swelling. Tr. 407.

Regarding Guerra's RFC assessment, the Social Security Administration had two Disability Determination Service professionals conduct RFC assessment reports: Dr. Eileen Zayas, M.D., at the initial level, and Dr. Rafael Queipo, M.D., at the reconsideration stage. Tr. 106-115, 117-130. Dr. Zayas found that Guerra was not disabled and Dr. Queipo agreed. Tr. 114, 130. Dr. Zayas concluded that Guerra had some exertional limitations, e.g. he could occasionally lift and/or carry a weight of 20 pounds, frequently lift and/or carry a

weight of 10 pounds, and can stand and/or walk, or sit for a total of six hours in an eight-hour workday. Tr. 112. The patient also has postural limitations that are more pronounced in postures such as stooping and crouching. Tr. 113. Despite these limitations, Dr. Zayas concluded that Guerra had the RFC to perform his past relevant work as a teacher. Tr. 114. Dr. Queipo elaborated on Guerra's impairments and found severe impairments caused by disorders of back-discogenic and degenerative ("DDD"), carpal tunnel syndrome, and joint dysfunction. Tr. 126. However, he opined that Guerra's statements regarding symptoms were not credible based on physical examinations and medical evidence. Tr. 126. In evaluating Guerra's RFC, Dr. Queipo agreed with Dr. Zayas and in addition indicated that Guerra had pushing and/or pulling limitations in right upper extremities. Tr. 127. Dr. Queipo confirmed Dr. Zayas's finding regarding Guerra's ability to perform his past work as a teacher. Tr. 130.

***Hypotheticals to the VE***

After briefly describing the vocational aspects of Guerra's past work as a machine operator and teacher, the ALJ asked the VE whether a person with Guerra's limitations could perform his previous jobs. Tr. 52-53. The ALJ elaborated on these limitations, indicating that this person was limited to occasionally reaching with both upper extremities; could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could sit, stand, or walk about six hours in an eight-hour workday; could frequently kneel or crawl and climb ramps, stairs, ladders, ropes, and scaffolds; and could occasionally stoop and crouch. Tr. 53. The VE responded no to the machine operator job. Tr. 54. The ALJ further queried about the teaching job and the VE stated "he could do that one." Tr. 54. The VE explained that the person with the above-described limitations could meet the physical demands of light work as a teacher or a professor. Tr. 54. Then the ALJ posed a different hypothetical of a person who can lift a maximum of 10 pounds and can sit, stand and/or walk at least two hours in an eight-hour workday, and asked the VE whether this person

can perform his previous jobs. Tr. 54. The VE's answer was no. Tr. 54. There was no questioning from Guerra's counsel.

In his decision, the ALJ gave great weight to the RFC assessments from state agency medical consultants Dr. Zayas and Dr. Queipo and the opinion of the consultative examiner Dr. Mendez, and gave little weight to Dr. Gonzalez Feliciano's opinions. The ALJ relied on the VE's answers to his hypotheticals and concluded that Guerra was able to perform his previous job as a teacher.

## DISCUSSION

Guerra claims that ALJ's Step Four finding on Guerra's RFC is not supported by substantial evidence; the ALJ did not apply the correct legal standard due to non-compliance with Social Security Ruling 82-62; and the ALJ failed to include all limitations supported by the record in the hypotheticals presented to the VE. Docket No. 16 at 11, 22. I examine the ALJ's findings as to each of these claims in turn.

**I.    Step Four RFC Finding**

Guerra contends that the ALJ's decision is not supported by substantial evidence, specifically when he determined that Guerra had limitations in occasionally reaching with both upper extremities. *Id*. at 12-14. According to the RFC assessment conducted by Dr. Queipo, Guerra experienced pushing and/or pulling limitations in right upper extremities. Tr. 127. Therefore, Guerra argues that ALJ made a determination on Guerra's overhead reaching limitation "without having any medical support at all." Docket No. 16 at 14.

Indeed, after reviewing the entire record, the ALJ concluded that Guerra was limited to occasionally reaching with both upper extremities. Tr. 19. This is inconsistent with evidence presented by Dr. Queipo in his RFC assessment, and hence an inaccurate representation of facts. However, such error is not sufficient for this court to grant reversal and remand because courts apply the harmless error standard when there is a defect in the ALJ's decision. *See United States* v. *Scott*, 270 F.3d 30, 46 (1st Cir. 2001) ("Even if we find error, we will not reverse if the error was harmless.").

The error is harmless in this case because even if the ALJ had correctly determined that Guerra's limitation in pushing and pulling was only occurring at right upper extremity, it would not have changed the ultimate outcome. *See also Stout* v. *Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (defining harmless error as such error that is "inconsequential to the ultimate non-disability determination"). In fact, being over-inclusive, the ALJ made an error that *increased* the severity of Guerra's impairment. The VE and the ALJ assumed Guerra to be limited in both upper extremities, so their finding of no disability would likely not change if the misconception were corrected. And since correcting the mistake "would not affect the outcome of the case," "a remand is not required." *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). *See also McNelley* v. *Colvin*, No. 15-1871, 2016 U.S. App. LEXIS 10155, at *3 (1st Cir. 2016) (ALJ's mischaracterization of claimant's GAF score history a harmless error); *Perez Torres* v. *Sec'y of Health & Human Servs.*, 890 F.2d 1251, 1255 (1st Cir. 1989) (ALJ's misreading of record harmless after review of entire record). After reviewing all evidence on the record, I find that the error pointed out by Guerra does not negate the validity of the ALJ's ultimate conclusion and the ALJ's determination is supported by substantial evidence.

When determining Guerra's impairments and the severities, the ALJ reviewed a variety of objective medical tests conducted by Guerra's treating physicians, such as the radiological reports conducted by the Department of Veterans' Affairs, the lumbar and cervical MRI conducted by Dr. Luis Acevedo Marty on August 29, 2012, the MRI of the cervical spine by Dr. Eric N. Pagan Morales on June 8, 2012, the MRI of the right shoulder, and the electrodiagnostic studies by Dr. Gonzalez Feliciano. Tr. 341-354. 394-398, 412-414, 527. Based on all these records, the ALJ concluded that Guerra's impairments were severe in nature. Tr. 17. I find that the ALJ's discussion from pages four to eight was sufficiently specific to make clear the weight the ALJ gave to the treating physicians' medical opinions, and there is substantial evidence on record to support the ALJ's RFC findings.

## II.　　Correct Legal Standard

Guerra also contends that the ALJ did not apply the correct legal standard and failed to comply with Social Security Rules 82-62. Docket No. 16 at 20. He argues the ALJ's decision is flawed because the ALJ gave no description of the physical and mental demands of past relevant work, and only provided a generic statement without fully explaining his decision or supporting it with specific reasons. Docket No. 16 at 20-21.

At Step Four, the ALJ must make a finding about the claimant's RFC based on all the relevant medical and other evidence in the case record. 20 C.F.R. §§ 404.1520(e), 416.920(e). In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain specific findings of fact as to: (1) the individual's physical and mental RFC, (2) the physical and mental demands of the past job/occupation, and (3) whether the individual's RFC would permit a return to his or her past job or occupation. SSR 82-62, 1982 SSR LEXIS 27 at *10. In the second finding required by SSR 82-62, the claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and non-exertional demands of such work. *Id.* at *6-7. The claimant has the initial burden of showing that he can no longer perform past work because of his impairment by laying the foundation as to what activities his former work entailed, and pointing out how his functional incapacity renders him unable to perform it. *Id.* at *5-6. *See Manso-Pizarro*, 76 F.3d at 17. Once this threshold is crossed, the ALJ must then compare the RFC assessment with the physical and mental demands of past relevant work and determine if the claimant can still do that kind of work. 20 C.F.R. §§ 404.1560(b). If the claimant retains the RFC to perform the actual functional demands and job duties of a particular past relevant job, the claimant will be found not disabled in the third finding. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See Santiago*, 944 F.2d at 5 (citing SSR 82-61).

To establish he could no longer perform his past work, Guerra submitted a work history report to the Social Security Administration. Tr. 274-278. Under the job title of

teacher, Guerra reported that he worked for eight hours a day and five days a week. Tr. 275. His job description includes preparation of lesson plans, roll calling, giving students the materials needed for the lesson, handing out books, correcting notes and administering and correcting quizzes and test. *Id*. In addition, Guerra provided progress notes from the Department of Veterans' Affairs Medical Center, Dr. Hector Vargas Soto, and Dr. Gonzalez Feliciano as proof of his impairments. Tr. 44, 341-354, 364-380, 381-399, 415-435, 436-437, 438-521, 553-594. To further support his claim, he testified at the hearing to intense pain in all parts of his shoulders, neck, upper and lower back, and a limitation in the range of motion in his neck. Tr. 43-45. The ALJ discussed all this evidence in his opinion and explained how much weight he gave to each. Tr. 19-22.

Based on Guerra's description of his past relevant work as a teacher, and the VE's evaluation, the ALJ determined the characteristics of this job as "teacher (DOT Code: 092.227-018) skilled in nature with an SVP-7 and light in exertional level." Tr. 21. The ALJ also compared the VE's testimony "with the information contained in the Dictionary of Occupation Titles" and explained that since they were consistent with each other, he accepted the VE's testimony. Tr. 22. Also, Guerra presented no objection to the VE's testimony when his counsel was given a chance to question the VE, nor was there any objection stated in Guerra's appeal. Tr. 55. See *Pires* v. *Astrue*, 553 F. Supp. 2d 15, 25 (D. Mass. 2008) (accepting VE's testimony because "Plaintiff's attorney did not object to [the vocational expert's] testimony"). Therefore, the ALJ's findings on the specific demands of the job and on Guerra's ability to return to his past job is supported by substantial evidence. *See Smith* v. *Colvin*, No. 15-2521, 2016 U.S. App. LEXIS 16933, at *3 (1st Cir. 2016) (when ALJ cited the Work History Report and the DOT, the ALJ's finding was supported by substantial evidence).

Regarding Guerra's testimony, the ALJ explained that he found Guerra's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 20. He found Guerra's allegations inconsistent "with the

medical record as whole" and the information provided by Guerra not entirely reliable. *Id*. Since "the ALJ [is] entitled to discredit the claimant's testimony regarding the limitations posed by his conditions," there is no reason for this court to question the ALJ's conclusion. *Frustaglia* v. *Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987).

With respect to opinions of multiple treating sources, the ALJ decided to give little weight to Dr. Gonzalez Feliciano's opinion "because it is neither explained by medically acceptable clinical and diagnostic techniques, nor supported by her own treatment notes." Tr. 21. When deciding the weight given to a treating source's opinion, courts usually look to whether it is "well-supported by medically acceptable clinical techniques and consistent with other substantial evidence in the record." *McNelley* v. *Colvin*, No. 15-1871, 2016 WL 2941714, at *1 (1st Cir. Apr. 28, 2016) (citing 20 C.F.R. § 404.1527(c)(2)). Furthermore, the ALJ explained that "Dr. Feliciano's opinion is inconsistent with the objective and other substantial evidence of the record." Tr. 21. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), (c)(4) (in deciding what weight to give to a medical opinion, the ALJ may consider the consistency of a medical opinion with the evidence in the record). Since the ALJ "specif[ied] what weight is given to a treating physician's opinion and [the] reason for giving it no weight," this court will not overrule the ALJ's decision. *MacGregor* v. *Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). *See also Rivera* v. *Sec'y of Health & Human Servs.*, 986 F.2d 1407 (1st Cir. 1993) ("The ALJ is *not* required automatically to give controlling weight to any 'treating' doctor's report").

Taken as a whole, the ALJ made "specific findings at each phase of the Step Four analysis," "provid[ing] for meaningful judicial review." *Winfrey* v. *Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996). The court finds that the ALJ fully complied with SSR 82-62.

### III.    Omitted Limitation in the Hypotheticals

Finally, Guerra argues that the ALJ failed to correctly identify Guerra's limitation in reaching when the ALJ posed the hypotheticals to the VE, hence the response from the

VE should not be considered as substantial evidence. Docket No. 16 at 22. Having already found in the above section that sufficient medical evidence supports the ALJ's RFC determination, I find that the questions the ALJ posed to the VE, which incorporated the RFC determination, accurately reflected Guerra's impairments and degree of severity. Tr. 53-54. Therefore, the VE's testimony provides substantial support for the ALJ's conclusion that Guerra can perform his previous job as a teacher.

An ALJ's hypotheticals to a VE "should convey the claimant's limitations precisely in order to yield relevant responses." *Maldonado* v. *Sec'y of Health & Human Servs.*, 972 F.2d 337 (1st Cir. 1992); *see also Cooper* v. *Bowen*, 880 F.2d 1152, 1158 n.13 (9th Cir. 1989) (VE's testimony cannot "constitute substantial evidence to support an ALJ's determination as to a claimant's disability status unless it accurately reflects all the claimant's limitations"). For "a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." *Arocho* v. *Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982).

The hypothetical posed by the ALJ accurately conveyed all the relevant limitations identified in the RFC assessment by Dr. Zayas and Dr. Queipo, with only the exception on his pushing and/or pulling exertional limitation. Tr. 53, 112-113, 127-128. Whereas Dr. Zayas found "unlimited" pushing and pulling ability and Dr. Queipo found limitation in reaching with right upper extremities, the ALJ's hypothetical question described the limitation as "reaching above his head with both upper extremities." Tr. 53, 113, 127. As discussed above, this, if anything, overstates Guerra's reaching limitations. Guerra also contends that the fact that Guerra is left-handed should be emphasized in the hypothetical question. Docket No. 16 at 22. Such minor misrepresentation of Guerra's limitation, and omission of Guerra's left-handedness, is harmless because the inclusion of these facts would not have changed the VE's answer. *See Parker* v. *Colvin*, No. 2:13-cv-19-DBH,

2013 U.S. Dist. LEXIS 184017, at *22 (D. Me. 2013) ("the administrative law judge's error in failing to expressly state" a limitation "was harmless" because precluding the error would not have impacted the VE's answer). Therefore, Guerra's objection to the adequacy of the hypothetical questions posed to the VE does not warrant a remand. *See Sousa* v. *Astrue*, 783 F. Supp. 2d 226, 236 (D. Mass. 2011) ("the hypothetical upon which the vocational expert based his opinion accurately reflected the" claimant's vocationally relevant limitations even when the ALJ omitted certain limitations).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of June, 2017.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge